UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SCF WAXLER MARINE LLC, | * | CIVIL ACTION NO. 16-902 |
| | * | C/W 16-959, 16-1022, 16-1060, 16-1134, |
| VERSUS | * | 16-1614 |
| | * | |
| M/V ARIS T ET AL. | * | SECTION: "A"(1) |
| | * | |
| | * | APPLIES TO: ALL CASES |
| ************************************** | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel filed by Genesis Marine, LLC of Delaware ("Genesis") (Rec. Doc. 129). For the following reasons, the Motion is DENIED.

Background

This case involves a northbound ship, the M/V ARIS T, that allided with various facilities and vessels near mile 123 of the lower Mississippi River. Genesis, the movant here, is the owner and operator of the towing vessel ELIZABETH M. ROBINSON. It submits that the ARIS T and a third vessel, the LORETTA CENAC, alone and/or combined, are responsible for the incident. (Genesis Answer and Third-Party Complaint, Rec. Doc. 42). Genesis notes that one issue in this case is that the ARIS T continued to navigate northbound at full maneuvering speed at all times prior to the first impact. The parties recently deposed Michael Leone, the pilot of the ARIS T, and asked him where he expected the LORETTA CENAC to be based on radio calls and his experience maneuvering. Leone replied:

> Well, I assumed that the [ELIZABETH] ROBINSON was going in on the right descending bank. She was going to be well on the right descending bank, west bank, if you will; that the LORETTA [CENAC] would probably be in the middle of the river at that point; and I would have my side of the river.

(Rec. Doc. 129-2, at 21). Pilot Leone testified several times that he assumed that the ELIZABETH ROBINSON was going in on the right descending bank and backing and stopping into Bayou

1

Fleet. He explained "[t]hat was her intentions. That's what she stated, she was going to be stopping, backing in there." Id. at 22. Genesis describes this testimony as Leone's "'assumption' factual version."

Genesis obtained the New Orleans Baton Rouge Steamship Pilots Association ("NOBRA") Pilot Incident Report that was signed by Michael Leone and provided to the NOBRA Board of Examiners. This NOBRA Pilot Incident Report includes a narrative description of the event. Leone declared that:

> [R]adio contact was made on Ch 67 with the *Elizabeth M. Robinson* (a downbound tow pushing three barges, strung out) wherein the *Elizabeth M. Robinson* proposed to meet Capt. Leone on the east bank in the deep water channel, as is customary. The *Elizabeth M. Robinson* advised he was heading for a Bayou Fleet located just downriver; therefore, the *Elizabeth M. Robinson* would be slowing down and backing into Bayou Fleet. The *Elizabeth M. Robinson* also stated that the *Loretta Cenac* (a small tow) was astern of the *Elizabeth M. Robinson*, and that the *Loretta Cenac* and the *Elizabeth M. Robinson* had an agreement for the *Loretta Cenac* to overtake the *Elizabeth M. Robinson* on two (2) whistles, wherein the *Elizabeth M. Robinson* would be favoring the west bank.

(Rec. Doc. 129-2, at 10). In addition to this statement, Genesis obtained the Marine Accident Brief published by the National Transportation and Shipping Board ("NTSB"). Genesis insists that none of the records reference the "assumption" version of events as Pilot Leone testified. [1]

At Pilot Leone's deposition, he also testified that he prepared a handwritten statement prior to the typewritten statement that was included in the NOBRA Pilot Incident Report and elsewhere. Leone stated that he "wrote everything out" and then provided the document to his attorney.

---

[1] At oral argument, counsel for Genesis insisted that the "assumption" version of events came as a complete surprise. Counsel argued that Genesis is entitled to determine whether Leone ever provided the "assumption" version to his counsel (for example, by suggesting changes to counsel's draft). The deposition testimony indicates that Leone's assumptions were based on statements from the ELIZABETH ROBINSON, which is consistent with the NOBRA Report's explanation of what the ELIZABETH ROBINSON advised. Thus, the Court is not convinced that the testimony differs drastically, if at all, from the Report. Even if the testimony and Report were inconsistent, however, it would not change this Court's privilege analysis. Only the work product privilege provides an exception where there is an extraordinary need for the protected materials.

Genesis seeks to determine whether the "assumption" version of the events is corroborated or contradicted by the handwritten statement, which Genesis describes as "contemporaneous."

Genesis subpoenaed Leone and requested "all statements prepared by you or on your behalf regarding the January 31, 2016 ARIS T incident including but not limited to the handwritten statement referenced by you in your deposition on April 11, 2017." [2] (Rec. Doc. 129-2, at 1). Leone's counsel responded with objections, asserting that "any statements by Capt. Leone were prepared at my direction and were provided to me as attorney for Capt. Leone for the purpose of seeking legal advice." Genesis filed the present motion to compel, arguing that the statements are not protected by the attorney client privilege because 1) they are merely factual recitations, which are not entitled to protection and 2) even if they were privileged, Leone waived the privilege because the statements were relied upon heavily to produce the typewritten NOBRA Pilot Incident Report that was produced to the U.S. Coast Guard, the NTSB, the NOBRA Board of Examiners, and to Genesis in response to a subpoena. Leone has made an appearance in the matter for the purposes of opposing the Motion. The Court ordered that Leone submit the documents at issue for *in camera* review, which Leone has done.

### The *in camera* Review

As a preliminary matter, the Court wishes to clear up some confusion about what documents do, and do not, exist. Given Leone's statements at his deposition, Genesis understandably believed that there is a contemporaneous handwritten statement prepared by Leone, one where he "wrote everything out" and submitted it to his attorney. However, the documents produced for *in camera* inspection and Leone's counsel's description of the sequence of events leading to the typed NOBRA Pilot Incident Report reflect that in his deposition, Leone

---

[2] The Court has pulled this language from the objections that Pilot Leone's counsel sent to Genesis. It does not appear that Genesis has included a copy of the subpoena at issue here with its submission to the Court.

was either mistaken in his recollection of what he prepared or revised more than a year previously, or inartful in describing the documents he created or completed and his role in preparing or revising them. The confusion caused by his testimony was likely compounded by Leone's counsel's objections, asserting that "any statements by Capt. Leone were prepared at my direction and were provided to me as attorney for Capt. Leone for the purpose of seeking legal advice." And that "[a]s such, Capt. Leone's handwritten statement is protected by the attorney-client privilege . . . ." (R. Doc. 129-2, at 1-2).

To the extent his deposition testimony suggested he handwrote a narrative, no statement of the sort Leone suggested he prepared was included for *in camera* inspection. Leone's counsel represented at oral argument that he has discussed this with Leone and no such document exists. According to Leone's counsel, Leone did not provide him with any documents prepared in advance of meeting with counsel. At the initial meeting between counsel and Leone, Leone completed by hand the first page and a half of the NOBRA Pilot Incident Report, ending with the category "Damages." That document is essentially a questionnaire, consisting of check boxes and fill in the blanks. Several questions prompt short answers. This is the only document which Leone substantially created or completed.

Following a discussion with Leone, counsel advises that he prepared a typed draft of the NOBRA Pilot Incident Report including a Description of Events. Counsel then emailed the draft to Leone for review and comments/corrections. Leone then handwrote in notes, questions, and changes to the narrative and returned the draft to counsel. At oral argument, Leone's counsel explained that he would have discussed the notes with Leone over the phone as they worked towards the final draft. Other than Leone's signature which appears on the NOBRA Pilot Incident Report, there are no other documents containing Leone's handwriting under review.

Law and Analysis

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Communications by the lawyer to the client are protected "if they would tend to disclose the client's confidential communications." Hodges, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." Id.

Genesis argues that the documents at issue here are not protected by the attorney client privilege because they are purely factual in nature. Genesis points to the well-known principle that the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn, 449 U.S. at 395. But, Genesis omits the Supreme Court's instructions later in the same paragraph:

> A fact is one thing and a communication concerning that fact is an entirely different thing. ***The client cannot be compelled to answer the question***, '***What did you say or write to the attorney?***' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney.

Id. (quoting City of Philadelphia, Pa. v. Westinghouse Elec. Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962)) (emphasis added). In Upjohn, for example, the company's attorney had asked employees to fill out questionnaires for purposes of an investigation of "possibly illegal" payments to foreign governments, to maintain the questionnaires confidentially, and to return them directly

5

to counsel. Id. at 386. The Supreme Court noted that the Government could question the employees, but the fact that it might be easier to simply subpoena the questionnaires and notes taken by the company's attorney was not sufficient to overcome the attorney-client privilege. Id. at 396. Genesis misses the point when it repeatedly argues that the attorney-client privilege does not apply to recitations of fact. As Upjohn makes clear, it is the ***underlying*** facts that are not protected by the attorney-client privilege. When the client recites facts to his attorney in the course of obtaining legal advice, that particular recitation is shielded from discovery.

Moreover, just because a factual statement is ultimately disclosed to the public, this does not mean that all drafts of the factual statement automatically lose any privilege that is attached to them. Natta v. Hogan, 392 F.2d 686, 692 (10th Cir. 1968) ("The situation is like that where a client gives general information to his lawyer so that the lawyer may prepare a complaint in any ordinary civil action. The fact that some of the information is thus publicly disclosed does not waive the privilege."); Buford v. Holladay, 133 F.R.D. 487, 492 (S.D. Miss. 1990) (holding that the ultimate publication of Attorney General Opinions did not waive the privilege as to the communications leading up to the creation of the Opinions). Often, drafts of a document exchanged between an attorney and client will reflect the client's request for advice regarding how to present the facts and the attorney's advice in response. Ideal Electric Company v. Flowserve Corporation, 230 F.R.D. 603, 605 (D. Nev. 2005) ("Drafts often contain attorney's and client's mental impressions, strategies, and either solicit or provide legal advice."). Such drafts are protected by the attorney client privilege. Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., No. CIV.A. 09-6644, 2014 WL 3385130, at *4 (E.D. La. July 10, 2014) (holding that redacted draft affidavits were protected by the attorney client privilege); United States v. N.Y. Metro. Transp. Auth., No. 03CV02139-SLT-MDG, 2006 WL 3833120, at *2 (E.D.N.Y. Dec. 29, 2006) (holding that draft

6

uniform policy bulletins "need not be produced since they are draft documents that were submitted to attorneys for the purpose of obtaining legal advice"); Ideal Electric Company, 230 F.R.D. at 605 (holding that draft affidavits were protected from disclosure by the attorney-client privilege); Long v. Anderson Univ., 204 F.R.D. 129, 135 (S.D. Ind. 2001) (holding draft answer to a complaint was privileged); Apex Mun. Fund v. N-Grp. Sec., 841 F. Supp. 1423, 1428 (S.D. Tex. 1993) ("[P]reliminary drafts of documents and communications made between attorney and client during the drafting process are privileged."); Allegheny Ludlum Corp. v. Nippon Steel Corp., No. CIV. A. 89-5940, 1991 WL 61144, at *5 (E.D. Pa. Apr. 15, 1991) (holding that a draft patent application was privileged because the draft was not intended to be publicly transmitted and contained a communication within the attorney-client relationship for the purposes of rendering a confidential opinion). As the Buford court explained:

> The mere fact that the end product of an attorney-client relationship is a document that becomes part of the public record does not per se waive the privilege as to all communications that occurred prior to the publication of that document. If the Court were to accept Plaintiffs' reasoning on this point, the ultimate conclusion would be that the mere filing of a complaint or an answer abrogates the privilege as to all communications between an attorney and his client which occurred prior to the filing of such a document. The result of such a standard would be the near total destruction of the attorney-client privilege.

133 F.R.D. at 492.

For example, a district court in the District of Nevada considered a situation very similar to that presented by this case regarding the discovery of drafts of an affidavit prepared in consultation with counsel. In Ideal Electric Company v. Flowserve Corporation, Flowserve Corporation ("Flowserve") sought to compel production of drafts of an affidavit signed by an employee of Lake Mead Constructors ("LMC"). 230 F.R.D. at 605. Flowserve argued that the employee had recanted portions of his affidavit testimony and that it was entitled to discover earlier drafts of the affidavit. Id. The employee had reviewed an initial draft of the affidavit, made

7

comments and adjustments, and returned it to counsel. Id. at 607. Flowserve argued that the draft affidavits were not protected by the attorney-client privilege because they related to facts that were ultimately disclosed to the Court in the final affidavit. Id. 606-07. LMC countered that "the drafts contain confidential communications that discuss the theory of the case and represent counsel's thought process regarding which facts are or are not relevant, as well as counsel and client's decision-making process regarding how best to present those facts." Id. at 607-08. After an i*n camera* review, the magistrate judge found the drafts were protected by the attorney-client privilege because they contained communications "with respect to *how* the facts should be presented" and such communications "were not intended to be submitted to the court." Id. at 608. The district court affirmed. Id. at 610. In so doing the district court explained that:

> the purpose of the attorney-client privilege is to foster openness between attorney and client to enable the attorney to give the most well-informed legal advice to the client. Accepting Flowserve's argument would frustrate the purpose of the privilege, by stifling the attorney's ability to advise the client at the time when the attorney's advice is most useful—i.e., before the client takes an action that could ultimately lead to a costly dispute in the courts. Thus, this Court concludes that attorney-client privilege protects the draft affidavits of [the employee].

Id.[3]

The district court also rejected Flowserve's invitation to redact those portions of the drafts containing privileged information. Id. at 610. The court explained that this would not be possible because "[t]he drafts are only useful to Flowserve to the extent they contain information that is additional or different to the final affidavit that Flowserve has already received," but "to the extent that these drafts are different, these differences are protected by the attorney client privilege and

---

[3] Similar considerations motivated the amendment of the Federal Rules of Civil Procedure to explicitly protect attorney-expert communications and draft expert reports. The committee observed that without such protection, "attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work." Fed. R. Civ. Proc. 26 advisory committee's notes to 2010 amendment.

the work product privilege." Id. This is similarly true here. Genesis now knows that contrary to what he suggested in his deposition, Leone did not appear at his counsel's office with a contemporaneous written statement of events. Rather, it has been firmly established through *in camera* review and oral argument, that the first narrative of the accident was prepared by the attorney based on an interview of the client, Leone. Leone then handwrote in some changes to that draft prior to it becoming a final document, which was produced to NOBRA and others. Nonetheless, Genesis continues to insist that the drafts be discoverable so it can see any changes made. As reiterated in Ideal Electric Company and as discussed further below, however, it is "these differences [that] are protected by the attorney client privilege and the work product privilege."[4] 230 F.R.D. at 610. Id. at 609.

The documents that Genesis seeks to discover here are 1) the NOBRA Pilot Incident Report partially filled out by Leone (with no narrative statement) at the request of his counsel while at an in-person meeting with counsel where he sought legal advice in the aftermath of the incident at issue in this lawsuit; 2) a draft of the Report including a narrative statement prepared by counsel after his interview of Leone; and 3) Leone's handwritten notes, questions, and changes to the Report as well as a note made by counsel. These are all drafts that were prepared and shared between Leone and his counsel. In the first, Leone communicates facts to his counsel for the purposes of obtaining advice on how to present facts regarding the incident to NOBRA. In the second, counsel conveys his strategy and advice regarding the presentation of the facts. The very presentation of the facts in the draft reveals counsel's determination of which facts are relevant. And in the third, Leone conveys his thoughts, suggestions, and questions regarding that

---

[4] As counsel for Genesis pointed out, Leone did not raise a work-product doctrine argument here so the Court does not address it. But the Court does note that had Leone raised the objection, the drafts here would likely be protected by the work-product doctrine as well. Further, the attorney-client privilege on its own is sufficient to protect the documents and thus, Leone's omission of any argument based on work product does not change the result.

presentation. These notes were discussed by Leone and counsel over the phone, and the draft also contains at least one note by Leone's counsel made during this discussion. Just as in Ideal Electric Company, the drafts here reflect counsel and the client's decision making process. Even though the advice is related to the facts and includes recitations of facts and analysis of how to present the facts, this does not destroy the attorney-client privilege. Of course Leone cannot refuse to answer questions about the incident because he discussed those same facts with counsel. But the communications in which he conveyed facts regarding the incident are protected because they were communications exchanged in confidence in the course of obtaining and providing legal advice.

Further, the Court finds that the ultimate disclosure of the final draft of the NOBRA Pilot Incident Report does not result in a waiver of the privilege. Just as in Ideal Electric Company, the Court finds that the drafts and notes were never intended to be made public. They were conveyed in confidence in the course of obtaining and giving legal advice. While Leone and his counsel were obviously working towards a document that would be made public, they did not intend that their drafts and analysis would be subject to disclosure. As the Court in Buford observed, the argument raised by Genesis here would result in disclosure of every draft of a pleading, brief, or affidavit that is exchanged between counsel and client merely because such drafts concern facts and the final draft is made public. At oral argument, counsel for Genesis seemed willing to live with this extraordinary result, but the Court finds that such a holding goes too far.

Critically, these drafts are exactly the type of document that must be protected by the attorney-client privilege for that privilege to have any force at all. As the Supreme Court explained in Upjohn, the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law

10

and administration of justice." 449 U.S. at 389. The client and his counsel must be free to discuss the facts so that counsel is able to provide the client with the appropriate legal advice. Whether they communicate orally or in writing, their discussion of the facts in such a context is privileged as long as those communications are made confidentially and remain confidential.

Genesis relies heavily on Woodward v. Avondale Industries, Inc., where Magistrate Judge Wilkinson found that a handwritten statement prepared by the plaintiff on June 17, 1998, which she provided to her attorneys before filing her complaint with the Equal Employment Opportunity Commission ("EEOC") in November 1998, was not protected by the attorney client privilege. No. Civ. A. 99-2771, 2000 WL 385513 (E.D. La. Apr. 14, 2000). But Woodward is not comparable to the present case. The handwritten statement at issue there was prepared by the plaintiff and then later delivered to counsel. In contrast, Leone's writings here were prepared during Leone's consultation with counsel. As discussed, Leone's counsel wrote the Description of Event based on an interview with Leone; Leone then revised it as he saw fit. In Woodward, the plaintiff reviewed the handwritten statement in preparation for her deposition to refresh her recollection. There is no dispute that Leone did not review the drafts at issue here in advance of his deposition. And in Woodward, there was concern because the plaintiff had allegedly lost and then later found the contemporaneous diaries that had been used to create the handwritten statement. No such concerns are raised here. The Court finds that Woodward is inapplicable to the analysis of the documents at issue in this matter.

## Conclusion

For the foregoing reasons, the Court finds that the drafts of the NOBRA Pilot Incident Report at issue here are protected by the attorney-client privilege and the disclosure of the final

11

draft of the Report does not result in a waiver of the privilege. Accordingly, the Motion to Compel is DENIED.

New Orleans, Louisiana, this 13th day of June, 2017.

                                                                  *Janis van Meerveld*
                                                            Janis van Meerveld
                                                     United States Magistrate Judge